# Wytheville.

## Potomac Power Company v. Burchell and Others.

### June 10, 1909.

1. Eminent Domain—*Payment of Compensation Into Court—Vesting of Title.*—Upon payment into court of the sum ascertained to be a just compensation for land condemned for a public use, the title to the land for which compensation is allowed vests absolutely in the company in fee simple, under the provisions of section 1079 of the Code.

2. Forfeiture—*Penalty to Secure Payment of Money—Relief in Equity Case in Judgment.*—Where land is condemned for a public use, and a written agreement is entered into between the owner and the petitioner condemning by which it is agreed that the owner shall withdraw his exceptions to the report of the commissioners, that the report shall be confirmed and the compensation fixed by the commissioners paid into court, and title shall vest in the petitioner, but that he shall pay to the owner a further sum of $100 on or before five years from that date, and if he fails to do so within the time limited then the title acquired by the petitioner shall revert to the owner, and the report is confirmed and the compensation fixed by it is paid into court, and by the court to the land owner, but the additional $100 is not paid within the time stipulated, the provision for the reverter of the title is a mere penalty or forfeiture to secure the payment of that sum with legal interest thereon.

3. Forfeitures—*Penalty to Secure Payment of Money—Relief in Equity—Damages.*—A court of equity will relieve against a penalty where its object is merely to secure the payment of a fixed sum of money. The measure of damages for failure to pay money is generally the principal sum with legal interest from the time it fell due.

4. Conditions Subsequent—*How Viewed.*—Where title to land has vested. any provision by which it is to be divested is regarded as a condition subsequent. Such conditions are not favored in law because they tend to destroy estates.

Appeal from a decree of the Circuit Court of Fairfax county. Decree for defendants.   Complainant appeals.

*Reversed.*

The opinion states the case.

*Moore, Barbour & Keith, Douglass S. Mackall,* for the appellant.

*Norton & Boothe,* for the appellees.

KEITH, P., delivered the opinion of the court.

The Potomac River Power Company, in June, 1898, gave notice that it would, on the 18th of the ensuing July, apply to the county court of Fairfax for the appointment of five disinterested freeholders, pursuant to section 1085 of the Code, to ascertain a just compensation to the owners thereof for such land as was proposed to be taken by that company for its purposes.

In accordance with this notice, five freeholders were appointed, who, acting in obedience to the order of court, returned their report, dated the 31st of October, 1898, in which they stated that they had ascertained that the sum of $150 would be a just compensation for the land taken.

At the January term 1899, of Fairfax county court, it appearing that the Potomac Power Company had paid into court the sum of $150, ascertained by the commissioners, the matter. was referred to W. P. Moncure, a commissioner of accounts, to report as to its distribution; and it was further ordered "by consent of parties that the report of the commissioners filed herein be and the same is hereby confirmed and recorded together with the plat that accompanies it in the deed books of this county, and this matter is continued."

At the ensuing February term, the following order was entered:

"Potomac River Power Co.

v.

N. W. Burchell, etc.

"The report of W. P. Moncure, commissioner of accounts, is now filed in this cause. No exceptions being made to same, the said report is now confirmed. And the court doth adjudge and order that out of the money in his hands the clerk do pay the costs and commissions incident to this case and the balance to pay to C. Vernon Ford, attorney for N. W. Burchell, and take his receipt for the same. And this order is final."

There the matter rested until January, 1905, when the Potomac Power Company, the successor of the Potomac River Power Company, filed its bill, in which it shows that on the 9th of January, 1899, it entered into a contract in writing with Norval L. Burchell, in which it was set forth and agreed that the Power Company had instituted proceedings to acquire for its purposes, by condemnation, a certain parcel of land in said county, containing three acres, more or less; that commissioners had allowed Burchell the sum of $150 for said land; that Burchell excepted to their report; that it was finally agreed that upon the payment into court of the sum of $150 the exceptions to the report of commissioners should be withdrawn, the court to dispose of the money as might be proper, and the report confirmed; that the title acquired by said company, however, in said condemnation proceedings should be subject to the condition that said company should pay Burchell the further sum of $100 before using said land for its purposes or any purpose; and that such payment should be made on or before five years from the date of the agreement, and in event the payment should not be made in the time specified, then the title of said company to revert to Burchell, and the said company to convey by special warranty to Burchell the title acquired by the condemnation proceeding; but upon payment by said company to Burchell of said sum of $100 within the

time specified, its title to said parcel of land should become absolute and unconditional so far as Burchell and his heirs should be concerned; and Burchell was then to convey the said parcel of land to the said company, its successors and assigns, with special warranty, free of all liens and encumbrances which might be placed thereon by said Burchell. The bill further shows that Burchell died some time prior to January 9, 1904, a non-resident of the State of Virginia; that he had never made any demand on the complainant for the payment of said sum of $100; and that up to the time of filing the bill no executor or administrator of his estate had qualified in Virginia, so that there was no one to receive the money due to him or his estate; that complainant is ready and desires to make the payment, with interest if it is proper; that Burchell left surviving him his widow and several children, his heirs at law; that complainant was willing to have waived, though it did not do so, the legal requirement that the $100 should be paid to the personal representative of Burchell, and was willing to make payment to the widow and heirs at law, and take a deed from them, but was afterwards advised that Edward Burchell, one of the children, was *non compos mentis;* that no deed had ever been tendered to complainant in accordance with the agreement; and complainant prays that the cloud resting upon its title by reason of the provisions of the agreement of the 9th of January, 1899, between the Potomac Power Company and Burchell, be quieted, and that complainant may have such other relief as his case requires.

The defendants answered this bill at length. They admit that Burchell was at the time he entered into said agreement and at the time of his death, which occurred in January, 1899, a non-resident of the State of Virginia, and that so far as they are informed he never made any demand upon the complainant, and that no executor on the estate of Burchell had ever qualified in Virginia. They deny that there was any obligation upon Burchell or upon his executor to make any demand upon

the Potomac Power Company for the payment of the sum of money in question, and further aver that at all times within the five years mentioned in the agreement, Landon Burchell, who acted for his father in the preparation of said agreement, and who is the executor and trustee under his will, resided in the city of Washington, and was prepared and authorized to accept the money in controversy, if there had been any desire upon the part of the Power Company to make payment of it.

That Burchell, at the time the commissioners reported and fixed the compensation at the sum of $150, had promptly excepted, upon the ground that the amount allowed was totally inadequate, and that he was preparing to show that said parcel of land, on account of its peculiar location, was of value largely in excess of the sum fixed by the commissioners; that after Burchell had filed his exceptions, in order to avoid protracted and costly litigation, an agreement was reached between the Power Company and Burchell, a copy of which is filed with plaintiff's bill. The answer states the defendants' view of the negotiations which led up to the contract filed with the bill at great length, the substance of it being that the sum of $100 provided for in the contract was not considered by Burchell as representing the value of the property, which it is claimed was and is greatly in excess of said sum, but that the real purpose and intention of said agreement was to give to the Power Company an option during the period of five years, by force of which, upon the payment of $100 within the time limited, the title of Burchell to the three acres of land was to be divested, and the deed was then to be made by Burchell conveying it with special warranty to the Potomac Power Company.

A good deal of evidence was taken in support of this view, which resulted in the decree of the circuit court of Fairfax by virtue of which a commissioner was appointed with instructions to convey to Landon Burchell, to be held by him in trust in accordance with the terms of the will of Norval W. Burchell, all the right, title and interest acquired by complainant and

those under whom it claims under the condemnation proceeding, in accordance with the agreement of January 9, 1899; and from that decree an appeal was allowed by this court.

Reference is made in the record to the source of Burchell's title as having been founded upon a sale for delinquent taxes assessed against the Chesapeake and Ohio Canal Company, which had at one time owned the land in controversy; but we have not thought it necessary to discuss that question, as that corporation is not named as a defendant in the bill, and is taking no part in this litigation. We have set forth in detail the condemnation proceeding in the county court of Fairfax, for upon the legal effect of that proceeding this controversy rests.

By section 1079 of the Code of 1887, it is provided that "the sum so ascertained to be a just compensation may be paid to the person entitled or into court. * * * Upon such payment the title to * * * the land for which said compensation is allowed shall be absolutely vested in the company in fee simple."

In *Southern Ry. Co.* v. *Gregg,* 101 Va. 308, 43 S. E. 570, it is said: "The payment of the fund into court was a condition precedent to the vesting of the title, and as soon as it was paid the title did vest absolutely."

It appears from the condemnation proceeding in this case, that the money was paid into court, and that the report of the commissioners was confirmed by consent of the parties; and not only that, but it further appears that the sum ascertained by the commissioners was by order of the court paid to the attorney of N. W. Burchell, the owner of the land taken. Whatever title Burchell had, by force of this proceeding, vested in the Potomac Power Company in fee simple.

The contract of January 9, 1899, is in writing; it is plain and unambiguous; and is within the direct terms of the rule which forbids us to receive parol evidence to vary or contradict a written instrument. *Towner* v. *Lucas,* 13 Gratt. 705; *Slaughter* v. *Smither,* 97 Va. 202, 33 S. E. 544.

The contract recites: "Whereas, the commissioners appointed by said court to ascertain a just compensation to be paid the owner or owners of said land, duly and regularly made their report to said court and therein and thereby assessed and fixed the amount to be paid by said company for said land at $150.00, and

"Whereas, the said N. W. Burchell, claiming to be the owner of said land, is dissatisfied with the amount so allowed and has filed exceptions thereto and has agreed in consideration of this agreement to withdraw his said exceptions and consents to the confirmation of the said report;

"Now, therefore, this agreement witnesseth, that the parties hereto have agreed and do hereby covenant and agree to and with each other as follows:

"First. That upon the payment of said sum of one hundred and fifty dollars into said court, such payment shall be considered as a complete satisfaction and answer to all objections and exceptions to said report, and thereupon the said report to be confirmed by a consent order vesting in said party of the second part title to said land, the said sum of $150.00 to be disposed of by the court as it may determine right and proper.

"Second. That the title so to be acquired by the said party of the second part as aforesaid shall be subject to this condition; that the party of the second part shall pay to the said Burchell the further sum of one hundred dollars before using said land for its purposes or any purpose, provided that such payment of said additional one hundred dollars shall be made on or before five years from this date, and in the event the said party of the second part shall fail to make such further payment of one hundred dollars within the time aforesaid, then and in such event, all title acquired by party of the second part to said land as aforesaid shall revert to said Burchell, and the party of the second part shall and will convey unto the said Burchell, with special warranty, all the right, title and interest acquired by it under said condemnation proceedings."

This contract recognizes in explicit terms the force and effect given to condemnation proceedings by section 1079 of the Code of 1887 upon the title to land where the terms of the statute have been complied with, and if· any added force could be given to the statute by agreement of parties it is to be found in the terms of this contract, which declares that the payment of $150 into court should be considered as a complete satisfaction and answer to all objections, and that thereupon the report was to be confirmed by a consent order vesting in the party of the second part title to the land. The title having vested, any provision or stipulation in that contract by which the title was to be divested is to be regarded as a condition subsequent.

A condition subsequent is one which is to be performed or fulfilled after the vesting of the estate, and the intent of which is to defeat it. 2 Minor, 266. And it is well settled that conditions subsequent are not favored in law, because they tend to destroy estates. *Peoples' Pleasure Park Co.* v. *Rohleder, ante,* p. 439, 61 S. E. 794.

The contract having already provided that upon the payment of the money awarded by the commissioners into court it should be considered as a complete satisfaction and answer to all objections on the part of Burchell, and that the report was to be confirmed and the title to the land vested in the Power Company, it was then provided that before using the land for its purposes or any purpose the Power Company should pay to Burchell the further sum of $100 within five years from the date of the agreement, and that if it failed to make such further payment within the time aforesaid, the title of the Power Company should revert to Burchell.

In the contemplation of a court of equity, the provision that upon the failure to pay the specified sum within the time limited, the title should revert to Burchell, is a penalty or forfeiture, the object of which is to secure the payment of money, against which a court of equity will relieve.

"The general principle now adopted is that whenever a

penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory and therefore as intended only to secure the due performance or the damage really incurred by the non-performance. In every such case, the true test by which to ascertain whether relief can be had in equity is to consider whether compensation can be made or not. If it cannot be made, then courts of equity will not interfere. If it can be made, then if the penalty is to secure the mere payment of money, courts of equity will relieve the party upon paying the principal and interest." 2 Story's Eq. Jur. sec. 1314.

In *Hackett* v. *Alcock,* 1 Call 533, it is said: "A court of equity will always relieve against a penalty, where compensation can be made."

In *Nelson* v. *Carrington,* 4 Munf. 332, it is said: "Equity is not fond of taking advantage of forfeitures arising merely from a lapse of the time specified; and it is the constant course of courts of equity to relieve against such forfeitures on making adequate compensation."

In the case of *Asher* v. *Pendleton,* 6 Gratt. 628, Pendleton and Asher had purchased a tract of land at public auction jointly upon credit and under a written contract between them, which provided that if Pendleton failed to pay all or any portion of his share of the purchase money so that Asher had to pay it, Asher should have the whole land, and repay to Pendleton any portion of the purchase money he had paid. Pendleton failed to pay and Asher paid in full. It was held by the court that this provision was a penalty against which a court of equity would relieve.

The condition upon which a court of equity grants relief against a forfeiture or penalty is that compensation for non-performance can be made; and in this case it is easy of ascertainment. The stipulation not performed was for the payment of $100 in cash on or before a given day in January, 1907. The

money was not paid, and as was said by this court in *Bethel* v. *Salem Imp. Co.,* 93 Va. 354, 25 S. E. 304, 57 Am. St. Rep. 808, 33 L. R. A. 602, "the measure of damages for a failure to pay money is, with few exceptions, the principal sum with legal interest thereon from the time the payment was due."

In *Selden* v. *Camp,* 95 Va. 527, 28 S. E. 877, Judge Harrison, speaking for the court, says: "Mere default in the payment of money at a stipulated time generally admits of compensation, and hence the time of payment is rarely of the essence of the contract, and when time is not of the essence of the contract, and compensation can be made, courts of equity can grant relief even against the failure to perform punctually conditions precedent."

We have then this case: By force of the condemnation proceeding in the county court of Fairfax, the title to the land involved in this litigation was vested in the Potomac Power Company.    The contract of January 9, 1899, between Burchell and the Potomac Power Company is fully set out in the writing filed as an exhibit with the bill.    There is no suggestion of any fraud, accident or mistake with respect to the terms of this contract; and, being plain and unambiguous, it is within the rule which excludes parol evidence to vary or contradict a written instrument.    The stipulation contained in the contract with respect to the payment of $100 within five years, and, in the event that it was not paid within that time, that the title which had vested in the Power Company should revert to Burchell, is a penalty or forfeiture, the non-performance of which admits of compensation, and against which a court of equity will relieve.

From all of which it follows, that the decree of the circuit court of Fairfax must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*